**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

BRANDON NICHOLAS BARNETT,      )
                               )
            Plaintiff,         )
                               )
      v.                       )      Case No. 1:18-CV-238 AGF
                               )
NINA HILL, et al.,             )
                               )
            Defendants.        )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on two motions for summary judgment filed by

Defendants Nina Hill and Roxanne Anderson (ECF No. 67) and Dr. William

Winkelmeyer (ECF No. 70).  For the reasons set forth below, the Court will grant

Defendants' motions.

## BACKGROUND

Plaintiff Brandon Barnett, an inmate in the custody of the Missouri Department of

Corrections, filed this action under 42 U.S.C. § 1983 alleging that he received inadequate

medical care at the Southeast Correctional Center (SECC) in Charleston, Missouri.  At

the time relevant to this case, Defendants Hill and Anderson were nurses who treated

Plaintiff in SECC's medical clinic.  Dr. Winkelmeyer was a nephrologist to whom

Plaintiff was referred for consultation and treatment outside SECC.  Viewing the facts

and all reasonable inferences in the light most favorable to Plaintiff for purposes of

summary judgment, the record establishes the following.[1]

**Defendant Nina Hill**

Defendant Nina Hill has 34 years' experience as a registered nurse and 18 years as

a family nurse practitioner.  Her declaration contains a detailed chronology of Plaintiff's

medical records.[2]  To summarize here, Plaintiff began losing weight in early 2016.  In

August 2016, Plaintiff had lab tests showing high levels of protein, potassium, and

creatinine in his urine.  He was on Lisinopril for hypertension but was refusing to take it,

so Nurse Hill ordered a different medication, Amlodipine.  Plaintiff is approximately six

feet tall and normally weighed around 180 pounds but, at the time of this visit, he

weighed 150 pounds.  They discussed his weight loss, but his BMI of 20.75 was above

the threshold of 19 for nutritional supplements.  ECF No. 25-2 at 1.

In January 2017, Nurse Hill counseled Plaintiff regarding healthy eating habits and

cautioned him to decrease the salt in his diet due to his hypertension.  *Id*. at 16.  Later that

month, he weighed 130 pounds and was referred to Dr. Kimberly Birch for evaluation.

At the time of that visit, Plaintiff weighed 138 pounds with a BMI of 18.7.  He noted that

he had been in and out of administrative segregation.  *Id*. at 17.  He complained of

stomach pain but denied other problems.  Dr. Birch prescribed ranitidine (Zantac) and

---

[1]     The facts are taken primarily from Plaintiff's medical records, with further
clarification and context provided by the declarations of Nurses Hill and Anderson.

[2]     Nurse Hill's declaration (ECF No. 25-1) and Plaintiff's full medical record (ECF
No. 25-2) were filed with the Court in earlier proceedings and are incorporated by
reference in the parties' briefs on the present motion.

instructed Plaintiff to avoid non-steroidal anti-inflammatory drugs (NSAIDs) and instead take Tylenol for pain.  She also ordered Plaintiff to receive "diet bags" (nutritional supplements) twice daily, and she ordered various tests of Plaintiff's kidneys, ureters, bladder, a urinalysis, a stool test, and other lab tests.  *Id*. at 18.

In February 2017, Plaintiff's lab tests revealed H. pylori bacteria, which attacks the stomach lining and causes stomach pain, nausea, loss of appetite, and weight loss. ECF No. 25 at 6.  He then weighed 143 pounds.  Nurse Hill ordered two antibiotics to fight the bacteria, omeprazole (Prilosec) for his stomach,[3] and continued diet bags.  ECF No. 25-2 at p. 25.  A week later, Plaintiff weighed 140 pounds and reported that he was not eating meals and wanted Ensure shakes.  Nurse Hill told Plaintiff to eat whatever he wanted in order to maintain weight but Ensure did not provide as many calories as the diet bags.  *Id*. at 26.

In April 2017, Plaintiff returned to Nurse Hill with complaints of heartburn. Nurse Hill noted that Plaintiff was not taking his ranitidine (Zantac), so she prescribed Protonix instead.  She discontinued his diet bags, as he then weighed 152 pounds.  *Id*. at 32.

In July 2017, Nurse Hill saw Plaintiff in the chronic care clinic regarding his hypertension and chronic kidney disease.  He weighed 149 pounds and voiced no complaints.  They discussed his labs and blood pressure, which was under control.  Nurse Hill ordered Lisinopril for his kidneys.  *Id*. at 35.  The following day, Plaintiff self-

---

[3]     Omeprazole is a proton-pump inhibitor (PPI) used to treat heartburn, stomach ulcers, and gastroesophageal reflux disease (GERD).  ECF No. 25 at 6.

declared an emergency for ulcers but did not appear to be in distress.  He weighed 150 and admitted that he was non-compliant with his Protonix.  *Id*. at 38.

In August 2017, Plaintiff had more lab tests, which showed high creatinine, low GFR (indicating kidney filtration rate), and persisting H. pylori bacteria.  Nurse Hill explained that that Plaintiff's kidney function was abnormal and encouraged him to increase fluids.  She ordered repeat labs in four weeks.  Plaintiff weighed 145 pounds. That same day, another nurse reviewed the H. pylori test and ordered two other antibiotics and chewable tabs.  *Id*. at 41-42.

On September 5, 2017, Nurse Hill saw Plaintiff again to review his bacterial treatment.  He weighed 152 pounds.  He said the antibiotics made him sick and the Protonix caused stomach distress.  *Id*. at 43.  He asked for diet bags or additional food. Nurse Hill encouraged Plaintiff to take all medications as prescribed.  On September 7, she discontinued the Protonix and prescribed omeprazole in an effort to alleviate Plaintiff's upset stomach.  On September 13, Plaintiff tested negative for H. pylori.  *Id*. at 47.  On September 17, Plaintiff self-declared an emergency for stomach pain and reported that he was not taking his medication because it made him sick.  *Id*. at 48.  On September 23, Plaintiff declared another emergency claiming a lump in his side, which the examining nurse did not confirm.  Plaintiff weighed 145 pounds and again demanded a snack bag.  *Id*. at 52.

In October 2017, Nurse Hill met with Plaintiff about his worsening kidney function.  He reported that he was not taking his Lisinopril.  He weighed 140, with a BMI of 19, so Nurse Hill ordered Ensure for him.  *Id*. at 54.  On some days in November and

4

December, he refused to drink the Ensure provided.  Nurse Hill eventually discontinued the Ensure, noting that Plaintiff had sometimes refused or wasted it (in once instance pouring it on the floor (*id*. at 70) and was not gaining weight (*id*. at p. 75).

In November 2017, he had repeat lab tests reflecting high creatinine, low filtration, and high urine protein.  In December, Nurse Hill ordered more labs, discussed a creatinine test with Dr. Tippen, and planned to refer Plaintiff to a nephrologist, Dr. Winkelmeyer.

In January 2018, Nurse Hill conferred with Dr. Winkelmeyer about how to treat Plaintiff.  *Id*. at 76.  He recommended additional tests and a telemedicine visit.  Nurse Hill submitted a referral, which was approved.  *Id*. at 77.  Plaintiff received more lab tests in advance of the consult.  Later that month, Nurse Hill saw Plaintiff in the chronic care clinic.  Plaintiff reported that he was not taking his Lisinopril.  *Id*. at 82.  He also reported symptoms he associated with H. pylori, so Nurse Hill ordered more tests.  Plaintiff weighed 146 pounds and had a BMI of 19.  He requested more snack bags, which Nurse Hill ordered.  *Id*. at 83.

In March 2018, Plaintiff met with Dr. Winkelmeyer, who recommended a renal ultrasound, an increase in Lisinopril, more labs in May, and a follow-up in June or July. Nurse Hill submitted a request for the ultrasound, which was approved.  *Id*. at 89.  Later that month, Plaintiff underwent the ultrasound, which revealed mild caliectasis on the right side.  The left kidney was not visible.  *Id*.  Nurse Hill sent the results to Dr. Winkelmeyer and also ordered another H. pylori test.  Days later, at Dr. Winkelmeyer's

recommendation, she requested a CT scan of the pelvis, which was approved.  *Id*. at 95-96.

In April 2018, Plaintiff's H. pylori test was negative, and he underwent a pelvic CT scan, revealing "no acute process" in the abdomen and no left kidney, which the radiologist presumed was congenitally absent.  *Id*. at 96.  Nurse Hill met with Plaintiff to discuss the results and various precautions to protect his only kidney.  *Id*. at 99.  He weighed 160 pounds.  The following week, Plaintiff declared an emergency of stomach pain and blood in his urine.  Another nurse performed a urine test revealing high protein but no blood.  She noted that Plaintiff was currently under treatment for his condition and encouraged him to take his medications as prescribed.  *Id*. at 100-103.

In May 2018, Plaintiff had more lab tests, and Nurse Hill submitted a request for a follow-up with Dr. Winkelmeyer, which was approved.  *Id*. at 106.  He had labs again in June and a follow-up in July, where Dr. Winkelmeyer diagnosed chronic kidney disease of unknown cause, a solitary kidney, hypertension, elevated hepatic transaminase, and acid reflux disease.  He prescribed a higher dose of Lisinopril as well as ranitidine (Zantac) and sucralfate (Carafate) and ordered repeat labs in November and a follow-up in December.  *Id*. at 111.  Nurse Hill saw Plaintiff in the following days and ordered the medications.  Plaintiff weighed 149 pounds and requested Ensure and diet bags, which Nurse Hill did not order as they had proven ineffective in the past.  *Id*. at 113.

In July 2018, Plaintiff began regularly refusing the medications prescribed by Dr. Winkelmeyer and also refused lab tests.  *Id*. at 118-127.  In September 2018, Plaintiff

began complaining of genital problems and asked to see a urologist.[4]  *Id*. at 130.  He requested extra food and admitted to not taking his medication.  He weighed 155 pounds.  *Id*. at 131.

In November 2018, Plaintiff's medical records reflect that he continued to refuse his medications.  *Id*. at 139.  In December 2018 and January 2019, Plaintiff had blood work and additional labs in preparation for his follow-up visit with Dr. Winkelmeyer, which took place on January 15, 2019.  During the visit, Plaintiff complained of blood in his urine, stool, and vomit.  *Id*. at 144.  Dr. Winkelmeyer recommended omeprazole, an upper GI endoscopy, labs every 6 months, and annual check-ups.  Nurse Hill saw Plaintiff later that day and reviewed his labs.  He weighed 140 pounds.  Nurse Hill ordered diet bags and weekly weigh-ins.  She discontinued Plaintiff's ranitidine and sucralfate and changed to omeprazole.[5]  *Id*. at p. 146.  However, she did not refer Plaintiff for an upper GI endoscopy because nothing in Plaintiff's medical records confirmed his self-reports of blood in his GI tract.  Instead, after discussing this with Dr. Tippen, they opted to obtain stool and urine samples to confirm the presence of blood.  *Id*. at 144.  Later that month, Plaintiff provided a urine sample, which showed no blood, but he refused to provide a stool sample.  *Id*. at 150-153.  As such, Nurse Hill could not confirm that an endoscopy was necessary and therefore did not request it.  *Id*. at 160.

---

[4]     These complaints are the subject of another lawsuit filed by Plaintiff.  *Barnett v. Hill*, No. 1:19-CV-8-JMB (E.D. Mo. Jan. 16, 2019).  The Court need not expand on them here.

[5]     This change in medication appears consistent with Dr. Winkelmeyer's note indicating that he "took [Plaintiff] off of PPI medication, which is somewhat nephrotoxic."  ECF No. 59-1 at 6.

In February and March 2019, records reflect that Plaintiff often refused to take his medication.  *Id*. at 154-160.  As of March 2019, Plaintiff weighed 160 pounds.  *Id*. at 161. Nurse Hill learned from security officers that Plaintiff often refuses regular meals and eats only diet bags.  In her declaration, she explained that diet bags and Ensure are "status objects" in prison.  ECF No. 25-1 at 21.

**Defendant Roxanne Anderson**

At the time relevant to Plaintiff's complaint, Nurse Anderson served as the Director of Nursing at SECC.  Although her role was primarily administrative, she did see patients occasionally and also reviewed inmates' internal grievances about their medical treatment.  The first step in the grievance process is the Information Resolution Request (IRR).  Nurse Anderson reviewed two of Plaintiff's IRRs.  In the first, filed in March 2017 (ECF No. 69-2), Plaintiff complained that he was not receiving adequate treatment for his H. pylori and weight loss.  He said he had not received the antibiotics Dr. Birch ordered and that he wanted to be placed on a special diet including Ensure shakes.  Nurse Anderson reviewed Plaintiff's medical records and concluded that Plaintiff was receiving appropriate treatment, including diet bags.  She noted that Plaintiff's weight (then 145) was within the normal range, and she encouraged him to eat his meals.  ECF No. 69-2 at 6.

Nurse Anderson reviewed another IRR filed by Plaintiff in March 2018, where Plaintiff complained that he was unable to communicate with Dr. Winkelmeyer during a telemedicine visit.  ECF No. 69-2 at 7.  As the Court understands it, there was a problem with the audio function such that Plaintiff was not able to respond directly to the doctor's

questions about Plaintiff's health history, so the nurse in the room provided the responses in writing.  (Dr. Winkelmeyer recalled that they compensated using a phone.  ECF No. 59-1 at 6.)  Plaintiff was dissatisfied and requested a second opinion.  Upon review, Nurse Anderson noted that a patient's health history is often provided by medical personnel, and Plaintiff was receiving treatment and follow-up as recommended by Dr. Winkelmeyer.  ECF No. 69-2 at 10.

Nurse Anderson saw Plaintiff for self-declared emergencies in May and September of 2017 and April and May of 2018.  ECF No. 69-3.  In each case, she examined Plaintiff and found no emergency.  She checked his blood pressure, completed a hypertension protocol, and advised him to avoid salt and drink fluids.  She performed a urinalysis revealing protein consistent with his kidney disease but no blood.  She noted that Plaintiff was not compliant with his medication and encouraged him to take it as prescribed.  *Id*. at 13.

**Dr. Winkelmeyer**

As previously stated, Defendant Winkelmeyer is an outside nephrologist not employed within SECC.  Nurse Hill contacted Dr. Winkelmeyer in January 2018 to discuss Plaintiff's abnormal lab results.  Plaintiff had a telemedicine visit with Dr. Winkelmeyer on March 8, 2018.  The doctor recommended a renal ultrasound and follow-up.  ECF No. 25-2 at 89.  As Plaintiff's left kidney was not visible on the ultrasound, Dr. Winkelmeyer recommended a CT scan of the abdomen and pelvis, which Plaintiff received in April 2018.  The radiologist found "no acute process" and noted that the left kidney was presumed congenitally absent.  *Id*. at 96.  Plaintiff had a second visit

with Dr. Winkelmeyer in July 2018, after which the doctor increased the Lisinopril dosage and added ranitidine and carafate. *Id*. at 107; ECF No. 74-3. He recommended a follow-up in November or December of that year. *Id*. At the next visit in January 2019, the doctor recommended daily omeprazole (for reflux), an upper GI endoscopy (for Plaintiff's complaints of blood in the GI tract), regular lab tests to monitor Plaintiff's renal insufficiency, and annual follow-up visits. *Id*. at 143. Also at that time, he took Plaintiff off of his PPI medication to protect the kidney. ECF No. 59-1 at 6. Dr. Winkelmeyer stated that he treated Plaintiff in the same manner as he would treat any other patient with chronic kidney disease. *Id*. at 7.

**Procedural History**

Plaintiff originally filed this action in October 2018 asserting claims against ten individuals who either participated in his care or had some supervisory role in the review of his grievances. This Court dismissed Plaintiff's claims against seven of those defendants in its initial review under 28 U.S.C. § 1915(b). ECF No. 8. Plaintiff's claims against Defendants Hill, Anderson, and Winkelmeyer survived dismissal.

As to these remaining Defendants, Plaintiff asserts in his complaint that (1) Nurse Hill delayed his diagnosis and treatment of stomach ulcers and gave him medication that damages his kidneys; (2) Nurse Anderson failed to give him Ensure and diet bags and also failed to send him to the hospital due to blood in his urine; and (3) Dr. Winkelmeyer has done nothing to effectively treat Plaintiffs ulcers or kidneys.[6]

---

[6]     Plaintiff also alleges that Nurse Anderson wrongfully denied his grievances and failed to correct medical mistakes by others. However, as the Court previously noted in

In March 2019, Plaintiff filed a motion for a temporary restraining order and injunctive relief seeking to order Nurse Hill and other dismissed defendants to refer Plaintiff to a urologist and for an endoscopy.  The Court denied the motion, reasoning that it was reasonable for Nurse Hill not to request an endoscopy absent medical evidence confirming the presence of blood in Plaintiff's urine or stool.  ECF Nos. 20, 37.  In May 2019, Plaintiff filed a second motion for injunctive relief on similar grounds, which this Court likewise denied.  ECF No. 42.

In May 2020, Defendants filed their respective motions for summary judgment asserting generally that Plaintiff fails to allege facts rising to the level of deliberate indifference to his serious medical needs.  The parties' arguments and additional facts in the summary judgment record are set forth below as relevant to Plaintiff's specific claims.

## DISCUSSION

### Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of demonstrating that there are no genuine issues of material fact rests on the moving party, and the court must

---

its order dismissing certain claims under § 1915(b) (ECF No. 8), a supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate, and an alleged violation of prison grievance procedures is not actionable under § 1983. *Tlamka v. Serrel*, 244 F.3d 628, 635 (8th Cir. 2001; *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

view the evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the non-moving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). Once the moving party discharges its burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it relates to the legal elements of the claim. *Id.* A material fact dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* The party opposing summary judgment may not rest on the allegations in its pleadings; it must set forth specific facts showing that there is a genuine issue for trial. *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir. 2006). A genuine issue of material fact exists only when there is a dispute about a fact material to the outcome of the case, and the dispute is genuine in that a reasonable jury could return a verdict for either party. *Johnson v. Leonard*, 929 F.3d 569, 577 (8th Cir. 2019).

At the summary judgment stage, courts do not weigh the evidence and decide the truth of the matter but rather determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. However, summary judgment may be appropriate when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In such circumstances, the mere existence of some alleged factual dispute will not serve to defeat summary judgment; instead, the factual dispute must be "genuine." *Id.*

**Deliberate Indifference Standard**

It is well established that a prisoner's Eighth Amendment right against cruel and unusual punishment is violated if prison officials exhibit deliberate indifference to the prisoner's serious medical needs. *Farmer v. Brennan,* 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A claim of deliberate indifference involves both an objective and subjective standard. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). A prisoner's claim amounts to a constitutional violation only when the plaintiff shows that (1) he suffered objectively serious medical needs and (2) prison officials actually knew of but deliberately disregarded those needs. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention. *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013).

To support a claim of deliberate indifference under § 1983, a prisoner must show more than negligence and more even than gross negligence. *Johnson*, 929 F.3d at 575. Deliberate indifference is found where medical care is so inappropriate as to evidence intentional maltreatment. *Id*. The level of culpability required to demonstrate deliberate indifference is akin to criminal recklessness. *Id*. at 576. Inmates have no constitutional right to receive a particular or requested course of treatment, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. *Id*. at 578; *Hines*, 547 F.3d at 920. "Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually intensive inquiry." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). The plaintiff must clear a "substantial

evidentiary threshold" to show that medical staff deliberately disregarded his needs. *Id*. An inmate cannot create a question of fact merely by stating that he received inadequate treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997). *See also Buchanan v. Kapur*, No. 2:15 CV 5 CDP, 2017 WL 3978377, at *7 (E.D. Mo. Sept. 11, 2017) (granting summary judgment where evidence showed that doctor continually addressed plaintiff's medical conditions).

When an inmate's claim is based on a delay in treatment, he must show that the alleged deprivation was objectively serious, as measured by the effect of the delay, and that the defendant was deliberately indifferent to the inmate's health. *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016). In order to create a genuine issue of fact on a claim involving delayed treatment, the plaintiff must submit evidence establishing that the delay had a detrimental effect. *Id*.

**Parties' Arguments**

Nurse Hill asserts as follows: she provided appropriate treatment for Plaintiff's stomach and kidney complaints; she treated Plaintiff's stomach complaints symptomatically because his medical records did not support a diagnosis of stomach ulcers; Plaintiff was referred to Dr. Winkelmeyer for his chronic kidney disease; and Plaintiff was provided nutritional supplements for his weight fluctuation until his weight improved or he was seen wasting or abusing the supplements. ECF No. 68. Nurse Hill argues that the record simply does not support Plaintiff's claim of deliberate indifference, and Plaintiff's mere disagreement with the course of treatment is not actionable.

14

Nurse Andersen asserts that she responded to Plaintiff's IRRs and determined that he was receiving appropriate treatment for his conditions; Plaintiff's self-declared medical emergencies were not in fact emergencies (e.g., no blood in the urine); and her treatment decisions do not support a claim of deliberate indifference.  ECF No. 68.

Dr. Winkelmeyer contends the following: he instituted a treatment plan to address Plaintiff's ongoing kidney problems; his plan was implemented by the staff and included medications, diagnostic tests, and further follow-up visits; Plaintiff was frequently non-compliant with his medications; and there is no evidence that Dr. Winkelmeyer's course of treatment was medically incorrect, much less deliberately indifferent.  ECF No. 72.

In response to Defendants' motions, as best as the Court understands it, Plaintiff argues the following (ECF Nos. 74-76): Plaintiff lost over 40 pounds from early 2016 to early 2017, proving that he contracted H. pylori in prison; Nurse Hill was negligent in not referring Plaintiff to a specialist sooner; Plaintiff was not provided the proper medications for ulcers and acid reflux; Plaintiff was not provided adequate nutrition; Plaintiff took his Zantac as prescribed; Plaintiff's Prilosec and Protonix made him sick; and Plaintiff has never refused his medication or Ensure shakes.  Plaintiff's responsive statement of facts (ECF No. 75) does not state material facts with supporting citations to the record but instead lists 24 questions such as whether Plaintiff contracted H. pylori at SECC; why Plaintiff lost 45 pounds at SECC; whether Plaintiff was diagnosed with ulcers; whether Defendants' treatment of Plaintiff satisfies applicable facility and constitutional standards; whether Plaintiff actually failed to take his medication and Ensure shakes; whether Plaintiff was born with two kidneys; and whether there are lawsuits involving

kidney damage caused by PPI medications (e.g., Zantac, Prilosec, Protonix).  In his brief in opposition to summary judgment (ECF No. 76), Plaintiff argues that Defendants' delay in treating Plaintiff for H. pylori and chronic kidney disease, and their inadequate treatment of those conditions once identified, constitute deliberate indifference.

In reply (ECF Nos. 77, 78), Defendants first note that Plaintiff's response fails to comply with Local Rule 4.01(E) (requiring citations to the record for each factual statement and responses corresponding to enumerated paragraphs of Defendants' statements of fact); consequently, Defendants' facts are deemed admitted.  Defendants are correct that a plaintiff's pro se status does not excuse him from responding with specific factual support for his claims or from complying with Local Rule 4.01(E).  *Cross v. MHM Corr. Services, Inc.*, 4:11CV1544 TIA, 2014 WL 5385113, at *2 (E.D. Mo. Oct. 10, 2014).  Nonetheless, a plaintiff's procedural failures do not automatically entitle a movant to summary judgment; the movant's facts must still demonstrate that the movant is entitled to judgment as a matter of law.  *Id.*

Next, Defendants assert that, even if the record is unclear as to whether Plaintiff had ulcers, any factual dispute is immaterial because Plaintiff was consistently treated for his various symptoms with appropriate medications.  Defendants further assert that there is no evidence in the record indicating that Plaintiff's medications caused his kidney disease.  Defendants reiterate that their treatment decisions were reasonable, Plaintiff was often non-compliant with his medication and diet, and Plaintiff has failed to establish any facts suggesting deliberate indifference.

**Additional Medical Records**

As a preliminary matter, the Court addresses a pending discovery dispute raised in multiple motions by Plaintiff.  Three months after the conclusion of summary judgment briefing, Plaintiff requested additional time to obtain medical records in the possession of two third-party custodians to refute Defendants' assertion that Plaintiff was born with only one kidney, though he had previously admitted this fact.  ECF No. 74 at p. 1.  Centrally, Plaintiff posits that Defendants' ignorance of his medical history demonstrates their alleged indifference with respect to his current treatment.  Out of an abundance of caution, the Court permitted limited additional discovery on that issue.  ECF No. 85.  Plaintiff requested those outside records but later claimed that prison staff withheld the records from him.  The Court ordered Defendants to respond (ECF No. 90), and after further investigation Nurse Anderson located one set of records from Metropolitan Psychiatric Center and provided them to Plaintiff.  She was unable to locate records that Plaintiff sought from Ciox Health.  ECF No. 91.

Upon receipt of Defendants' status report, the Court gave Plaintiff one final extension to file any further records reflecting whether he was born with one or two kidneys.  ECF No. 95.  Plaintiff then moved to supplement the record with a patient intake sheet from the psychiatric center dated October 24, 2011 and titled Review of Symptoms, containing a checklist by category and indicating no urinary symptoms.  ECF No. 96.  Plaintiff also filed motions to compel and for sanctions against Defendants, again insisting that they are withholding his medical records to sabotage this case.  ECF Nos. 97, 98.  While Plaintiff's motion to supplement will be granted, the Court does not

17

find the intake sheet remotely clarifying on the issue of Plaintiff's missing kidney.  And Plaintiff's discovery motions will be denied for reasons discussed in the Court's previous order on the subject.  ECF No. 95.

Put simply, the Court sees no reason to further delay a ruling on summary judgment notwithstanding the alleged existence of other records.  Upon review of the present record and as further discussed below, the Court finds that, even had Plaintiff been able to produce documents confirming that he was not missing a kidney at birth, the evidence still demonstrates that Defendants have provided adequate care to Plaintiff during his incarceration.  The ultrasound and CT scan ordered by Defendants conclusively established the absence of a left kidney at the time relevant to Plaintiff's claims.  There is nothing in the record to suggest that Defendants provided inadequate care based on whether Plaintiff had one kidney or two.  When Nurse Hill learned that Plaintiff had only one kidney, she counseled him to take extra precautions to protect it, i.e., by taking his medications as prescribed, which he nonetheless refused to do.

Thus, the Court concludes that whether Plaintiff had another kidney at some point prior to his incarceration is not a genuine issue of material fact in this case, and Defendants have assured the Court that they have provided whatever records could be located.  The Court will proceed to the merits of Defendants' motions for summary judgment.

### Analysis

As previously stated, inmates have no constitutional right to receive a particular or requested course of treatment, and mere disagreement with treatment decisions does not

rise to the level of a constitutional violation.  *Johnson,* 929 at 578; *Hines*, 547 F.3d at

920.  To support a claim of deliberate indifference, a plaintiff must show more than

negligence and more even than gross negligence but rather conduct akin to criminal

recklessness.  *Johnson*, 929 F.3d at 575.

At most, the present record suggests that it took some time for the Defendant

Nurses to identify Plaintiff's H. pylori infection and kidney disease initially.  Plaintiff

began losing weight in early 2016 and had abnormal urine tests in August 2016 but was

not referred to Dr. Birch until January 2017,[7] and it took another year before Plaintiff was

referred to Dr. Winkelmeyer.  But this alone is insufficient to invite an inference that the

Defendant Nurses were deliberately indifferent to Plaintiff's medical needs.   Plaintiff

supplies no evidence indicating that the delay in diagnosis represents a gross departure

from the standard of care.  Rather, it appears that the Nurses tried various medications

and dietary counseling to resolve Plaintiff's symptoms but, after those proved ineffective,

they eventually determined that a specialist's expertise was necessary.  Further, in order

to create a genuine issue of fact on a claim involving delayed treatment, the plaintiff must

submit evidence establishing that the delay had a detrimental effect.  *Jackson*, 815 F.3d at

1119.  There is no such evidence in this record.  Plaintiff continued to experience weight

fluctuations even after his H. pylori infection was resolved, and his kidney disease is

---

[7]      In August 2016, one nurse suspected that Plaintiff's lab results showing high
protein were "potentially lab error," though Plaintiff's labs were repeated several days
later.  ECF No. 25-2 at p. 7-8.  That fall, Nurse Hill attributed Plaintiff's symptoms to
poor diet.  Plaintiff's H. pylori infection was discovered in February 2017 after Dr. Birch
ordered tests.

chronic.  Both issues appear to be partially dependent on Plaintiff's compliance with nutritional counseling and prescribed medications.

Though the medical records reflect that Plaintiff experienced ongoing stomach and kidney issues and difficulty in maintaining his weight, this alone is not sufficient to permit an inference of criminal recklessness by Defendants, particularly in light of Plaintiff's non-compliance.  Defendants investigated Plaintiff's symptoms, sought diagnostics, and ordered appropriate treatment. Plaintiff supplies no specific evidence (e.g., expert opinion) indicating that Defendants' treatment decisions were unreasonable. Nothing in the record supports an inference that Defendants were deliberately indifferent to Plaintiff's medical needs.  On the contrary, the record reflects ongoing attention and care.

The record also does not support Plaintiff's assertion that the medications prescribed by Defendants caused his kidney disease.  As the Court understands the record, Plaintiff's abnormal urine tests pre-date his PPI prescriptions.  Defendants tried various combinations and doses of medications to arrive at a successful "cocktail" for Plaintiff's symptoms.  The fact that Plaintiff did not tolerate the medications well (when he chose to take them), though undoubtedly unpleasant, does not give rise to a claim of deliberate indifference on the part of his treating professionals.  Plaintiff's dissatisfaction with his treatment or disappointment in the persistence of his symptoms does not create a genuine issue of material fact to support the claim.

To defeat a motion for summary judgment, a plaintiff may not merely point to unsupported self-serving allegations but must substantiate allegations with sufficient

probative evidence that would permit a finding in his favor.  *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006).  Plaintiff points to no specific evidence outside his own statements from which a reasonable jury could infer that Defendants provided care so inadequate as to constitute deliberate indifference.  The medical records of Plaintiff's care plainly refute Plaintiff's allegations.  Medical malpractice is not actionable under the Eighth Amendment, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.  *Popoalii v. Corr. Med. Services*, 512 F.3d 488, 499 (8th Cir. 2008).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380. Defendants' motions for summary judgment will be granted.

## CONCLUSION

The summary judgment record reflects that Defendants provided Plaintiff reasonable and ongoing care and treatment within the standard of care.   Notwithstanding Plaintiff's dissatisfaction, the evidence does not give rise to genuine issues of material fact permitting a jury to find that any Defendant acted with deliberate indifference to Plaintiff's serious medical needs.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to supplement the record is **GRANTED**.  ECF No. 96.

**IT IS FURTHER ORDERED** that the motion for summary judgment by Defendants Nina Hill and Roxanne Anderson is **GRANTED**.  ECF No. 67.

**IT IS FURTHER ORDERED** that the motion for summary judgment by Defendant Dr. William Winkelmeyer is **GRANTED**.  ECF No. 70.

**IT IS FURTHER ORDERED** that Plaintiff's outstanding discovery motions are **DENIED**.  ECF Nos. 97, 98.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G.  FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of March 2021.